TODD BLANCHE
Deputy Attorney General of the United States
SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada
Nevada Bar Number 8264
DANIEL R. SCHIESS
Assistant United States Attorney
Nevada Bar Number 5483
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336
Fax: (702) 388-6418
Dan.Schiess@usdoj.gov
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:25-CR-027-APG-EJY |
| Plaintiff, | **Stipulation for Entry of Order of Forfeiture as to Richard Vairo and Order** |
| v. | |
| RICHARD VAIRO, | |
| Defendant. | |

The United States of America and Richard Vairo, and his counsel, Jude Michael Faccidomo, agree as follows:

1.    The Grand Jury sitting in Las Vegas, Nevada returned a 10-Count Indictment against Richard Vairo (Vairo) for violations of wire fraud under 18 U.S.C. § 1343. Richard Vairo pled guilty to Counts 1-10 of the Criminal Indictment.[1]

**FACTS:**

2.    The facts set forth in the Criminal Indictment and the Memorandum in Support of Guilty Plea Without Plea Agreement (Memorandum) are incorporated as if fully set forth herein.[2]

---

[1] Criminal Indictment (CI), ECF No. 1; Minutes of Change of Plea, ECF No. 44.
[2] LR IA 10-3(a) (citation to court documents are permitted); CI, ECF No. 1; Memorandum, ECF No. 43.

3. From in or about September 2021 to in or about October 2022, in the State and Federal District of Nevada, and elsewhere, Richard Vairo devised and intended to devise a scheme and artifice to defraud and for obtaining money and property from a food brokerage company known as Scholer & Sons, LLC, (Scholer & Sons) and its owner, Eric Scholer, for his unauthorized personal use by means of false and fraudulent pretenses, representations, and promises.

4. Vairo carried out the scheme by making and causing to be made materially false and fraudulent pretenses, representations, and promises to Scholer as follows:

a. RBS, a company owned by defendant Vairo, supplied and was supplying sausage and another meat products (collectively referred to as sausage) to Publix Supermarkets (Publix) in Florida;

b. Defendant Vairo wanted to borrow money from Scholer & Sons to increase RBS's sausage sales to Publix and that he would repay Scholer & Sons a percentage of the gross profits that RBS would receive from its sausage sales to Publix;

c. Defendant Vairo would use and was using the money he obtained from Scholer & Sons to supply sausage to Publix; and

d. PNC Bank had frozen the funds in RBS's bank accounts, preventing RBS from timely repaying about $1 million to Scholer & Sons and to Scholer.

5. It was part of the scheme and artifice that Vairo committed the following acts, among others:

a. In or about October 2021, defendant Vairo solicited money from Scholer to purportedly help RBS to increase its sales of sausage to Publix;

b. On or about October 25, 2021, defendant Vairo signed and caused Scholer to sign a Distribution Agreement, also known as a Letter of Intent (Agreement), representing that: (a) Scholer & Sons would supply capital to RBS to allow it to increase its sales of sausage to Publix; (b) Scholer & Sons would receive a percentage of the gross profits that RBS would receive from its sales of sausage to Publix; and (c) RBS would help Scholer & Sons become RBS's exclusive distributor and vendor of record with Publix;

c.  Beginning in or about October 2021, defendant Vairo caused Scholer & Sons and Scholer to start wire transferring money to RBS;

d.  Beginning in or about October 2021, defendant Vairo caused to be sent to Scholer weekly statements showing for each week covered by the statements the amount of sausage RBS would supply to Publix, the amount of money Scholer & Sons and Scholer would need to provide to RBS, and the amount of money Scholer & Sons and Scholer should expect to receive from RBS;

e.  About a month after Scholer & Sons and Scholer began sending money to RBS, defendant Vairo sent and caused to be sent to Scholer two fake invoices purportedly from Publix showing the amount of sausage that RBS had delivered to Publix and the balance due for the periods covered by the invoices;

f.  A couple months later, defendant Vairo represented and caused to be represented to Scholer that RBS could not timely repay Scholer about $1 million because PNC Bank had placed a hold on the funds in RBS' bank accounts, and over the next several months defendant Vairo repeatedly represented and caused to be represented to Scholer that PNC Bank had not released RBS's funds;

g.  Defendant Vairo, however, repaid other amounts owed to Scholer & Sons and Scholer from money that he had received from Scholer & Sons and Scholer, falsely representing to Scholer that the repayments came from sausage sales to Publix;

h.  Defendant Vairo used money received from Scholer & Sons and Scholer to, among other things, support his lifestyle, pay his bills and debts, and conduct his business activities;

i.  Throughout the scheme and artifice, defendant Vairo exchanged and caused to be exchanged with Scholer text messages, WhatsApp messages, and emails containing the false and fraudulent pretenses, representations, and promises described in this indictment, among others; and

j.  During the scheme and artifice, defendant Vairo caused Scholer & Sons and Scholer to send approximately $10,747,578.26 in approximately 29 wire transfers to

defendant Vairo and RBS, and defendant Vairo repaid Scholer & Sons and Scholer approximately $6,859,957.39 in approximately 17 wire transfers from the money that Scholer & Sons and Scholer had sent to defendant Vairo, as if the repayments came from sausage sales to Publix, resulting in a net loss to Scholer & Sons and Scholer of approximately $3,887,620.

6. Scholer made the following deposits to Vario's controlled accounts[3]:

|  | Date of Deposit | Amount | Bank Account |
|---|---|---|---|
| 1 | 10/25/2021 | $415,892.40 | PNC 2367 |
| 2 | 11/2/2021 | $415,892.40 | PNC 2367 |
| 3 | 11/8/2021 | $415,892.40 | HSBC 2516 |
| 4 | 11/15/2021 | $415,892.40 | HSBC 2516 |
| 5 | 1/28/2022 | $428,302.00 | HSBC 2516 |
| 6 | 2/4/2022 | $428,302.00 | HSBC 2516 |
| 7 | 2/15/2022 | $428,302.00 | HSBC 2516 |
| 8 | 2/18/2022 | $428,302.00 | HSBC 2516 |
| 9 | 3/3/2022 | $428,302.00 | CITIZENS BANK 8176 |
| 10 | 3/7/2022 | $428,302.00 | CITIZENS BANK 8176 |
| 11 | 4/1/2022 | $699,831.00 | CITIZENS BANK 8176 |
| 12 | 4/1/2022 | $699,831.00 | CITIZENS BANK 8176 |
| 13 | 4/7/2022 | $239,831.00 | CITIZENS BANK 8176 |
| 14 | 4/7/2022 | $460,000.00 | CITIZENS BANK 8176 |
| 15 | 4/15/2022 | $699,831.00 | CITIZENS BANK 8176 |
| 16 | 4/27/2022 | $152,165.31 | CITIZENS BANK 8176 |
| 17 | 4/28/2022 | $466,500.84 | CITIZENS BANK 8176 |
| 18 | 5/5/2022 | $210,000.00 | CITIZENS BANK 8176 |
| 19 | 5/6/2022 | $256,500.84 | CITIZENS BANK 8176 |

[3] Ex. 3, LIBR Spreadsheet, Tab 2367, Tab 2516, Tab 8176.

| 20 | 5/13/2022 | $276,664.20 | CITIZENS BANK 8176 |
|----|-----------|-------------|--------------------|
| 21 | 5/16/2022 | $500,000.00 | CITIZENS BANK 8176 |
| 22 | 5/17/2022 | $83,175.70 | CITIZENS BANK 8176 |
| 23 | 5/20/2022 | $128,000.00 | CITIZENS BANK 8176 |
| 24 | 5/26/2022 | $500,000.00 | CITIZENS BANK 8176 |
| 25 | 5/27/2022 | $500,000.00 | CITIZENS BANK 8176 |
| 26 | 6/3/2022 | $341,264.39 | CITIZENS BANK 8176 |
| 27 | 7/1/2022 | $49,743.06 | CITIZENS BANK 8176 |
| 28 | 7/8/2022 | $61,021.68 | CITIZENS BANK 8176 |
| 29 | 7/14/2022 | $189,836.64 | CITIZENS BANK 8176 |
| | TOTAL | $10,747,578.26 | |

7.      On or about November 3-5, 2021, Vairo and RBS purchased a 2019 Ferrari Portofino, bearing VIN ZFF89FPA3K0238312 (2019 Ferrari Portofino), from Ferrari-Maserati of Ft. Lauderdale, Ft. Lauderdale, Florida, for $245,589.95. Vairo paid off a 2011 Ferrari he owned using $32,844.93 from the $220,000 of illegal proceeds transferred from PNC bank account 2367 held in the name of Richard Vairo Santos.[4] Vairo received a $65,000 trade in allowance for the 2011 Ferrari, leaving $32,155.07 that is not traceable to illegal proceeds. After trade in, Vairo owed $226,000 to purchase the 2019 Ferrari Portofino. The total money that cannot be traced to illegal proceeds was $35,165.07. Vario paid $222,990 of illegal proceeds and $3,010 that cannot be traced to illegal proceeds.[5]

8.      Richard Vairo was the registered owner of the 2019 Ferrari Portofino on July 6, 2022.[6]

9.      Vario purchased the Ferrari just eight days after Vairo received his first deposit from Scholer, that is, $415,892.40 on October 25, 2021. Vairo controlled the account

---

[4] Tracing illegal proceeds was done using the Lowest Intermediate Balance Rule (LIBR).
[5] Ex. 3, LIBR Spreadsheet, Tab 2367; Ex. 4, Retail Purchase Agreement of the 2019 Ferrario Portofino.
[6] Ex. 5, Florida DMV Records of the 2019 Ferrari Portofino.

to which the deposit was made, and from which the deposit was transferred to other accounts before it was used to purchase the Ferrari.[7]

10. On or about November 4, 2020, Vairo opened PNC account #2367 in the name of Richard's Brazilian Sausage. The account listed Vairo as RBS' manager and as the account's only signer.

11. On September 10, 2021, PNC account 2367 had a balance of $453.22 in other funds. On October 25, 2021, a transaction occurred in JPMorgan Chase Bank account 1220 controlled by Scholer which transferred $415,892.40 to account PNC account 2367 controlled by Vairo.

12. On October 25, 2021, an online transaction was made which caused $151,600 to be transferred from account PNC account 2367 controlled by Vairo to PNC account 5373 controlled by Vairo. All but $205.52 of these funds were illegal proceeds.

13. On November 2, 2021, a wire transaction of $415,892.40 was made from JPMorgan Chase Bank account 7658 controlled by Scholer to PNC account 2367 controlled by Vairo.

14. On November 3, 2021, a transaction occurred which caused $310,000 of illegal proceeds to be transferred from PNC account 5373 controlled by Vairo to PNC account 2367 controlled by Vairo. That same day, $220,000 was withdrawn from account 2367 controlled by Vairo through a cashier's check issued to Ferrari of Ft. Lauderdale. At that time, account 2367 had a balance of $933,949.01 of fraudulently obtained illegal proceeds.

15. On November 3, 2021, a transaction occurred which caused $231,000 of fraudulently obtained illegal proceeds to be transferred from account PNC account 2367 controlled by Vairo to PNC account 5373 controlled by Vairo. On November 9, 2021, $450,983.61 of fraudulently obtained illegal proceeds were transferred from account 2367 to account 5373.

/ / /

---

[7] Ex. 3, LIBR Spreadsheet, Tab 2367; Ex. 4, Retail Purchase Agreement.

| Date | Amount of Deposit | Amount of Proceeds | From |
|---|---|---|---|
| 10/25/2021 | $415,892.40 | $415,892.40 | Scholer & Sons |
| 11/2/2021 | $415,892.40 | $415,892.40 | Scholer & Sons |
| 11/3/2021 | $310,000 | $310,000 | 5373 |

| Date | Withdrawal/Transfer | Amount of Proceeds | To |
|---|---|---|---|
| 10/25/2021 | $151,600 | $151,394.48 | 5373 |
| 11/3/2021 | 220,000 | $220,000 | Ferrari of Ft. Lauderdale |
| 11/3/2021 | $231,000 | $231,000 | 5373 |
| 11/9/2021 | $450,983.61 | $450,983.61 | 5373 |

*PNC Account 5373[8]*
*Richard Vairo Santos/Louise Ewerton Vairo*

16. On or about November 4, 2020, Richard Vairo Santos and Louise Ewerton Vairo opened PNC checking account 5373. Both appeared as signers on the account, and that account showed an address of 164 SW 83rd Way, Pembroke Pines, Florida.

17. On October 25, 2021, $151,394.48 of illegal proceeds was transferred from PNC account 2367 controlled by Vairo to PNC account 5373 controlled by Vairo and was used to make a down payment on the 2019 Ferrari Portofino.

18. On November 3, 2021, $231,000 in illegal proceeds was transferred from PNC account 2367 controlled by Vairo to PNC account 5373 controlled by Vairo, increasing the account illegal proceeds balance to $333,347.16. That same day, $310,000 of illegal proceeds was transferred from PNC account 5373 controlled by Vairo to PNC account 2367 controlled by Vairo.

/ / /

/ / /

---

[8] Ex. 3, LIBR Spreadsheet, Tab 2367 and Tab 5373.

19.    On November 4, 2021, a debit card payment of $3,000 was made from PNC account 5373 controlled by Vairo to Ferrari of Ft. Lauderdale. $2,990 of $3,000 was comprised of illegal proceeds and $10.00 was other funds.

20.    On November 9, 2021, $450,983.61 of illegal proceeds was transferred from PNC account 2367 controlled by Vairo to PNC account 5373 controlled by Vairo. That same day, an additional $450,983.61 of illegal proceeds was transferred from PNC account 5373 controlled by Vairo to Truist Bank account 6881 controlled by Vairo. These transactions are illustrated in the chart below.

| Date | Amount of Deposit | Amount of Proceeds | From |
|---|---|---|---|
| 10/25/2021 | $151,600 | $151,394.48 | 2367 |
| 11/3/2021 | $231,000 | $231,000 | 2367 |
| 11/9/2021 | $450,983.61 | $450,983.61 | 2367 |

| Date | Withdrawal/Transfer | Amount of Proceeds | To |
|---|---|---|---|
| 11/3/2021 | $310,000 | $310,000 | 2367 |
| 11/4/2021 | $3,000 | $2,990 | Ferrari/Ft. Lauderdale |
| 11/9/2021 | $450,983.61 | $450, 983.61 | 6881 |

21.    The 2019 Ferrari Portofino was purchased with $222,990 of illegal proceeds. The remainder of the purchase, consisting of $35,165.07, cannot be traced to illegal proceeds.

### Purchase of 2021 Ferrari F8 Spider[9]

22.    Vairo traded in the 2019 Ferrari Portofino towards the purchase of a 2021 Ferrari F8 Spider. The vehicle's base price was $549,900. A $150.00 service fee was added totaling $550,050. The trade in allowance was $215,050, leaving a balance of $335,000. The trade in of the 2019 Ferrari Portofino was all illegal proceeds except the $35,165.07.

23.    On June 17, 2022, $335,000 of illegal proceeds was wire transferred from a Truist Bank account 6881 under Vairo's control to Auotomobili Italiane, Inc., for the

---

[9] Ex. 3, LIBR Spreadsheet, Tab 2516, Tab 8176, Tab 6911, Tab 6903, Tab 6881.

8

purchase of the 2021 Ferrari F8 Spider. Richard Vairo submitted a bill of lading to ship the vehicle from Seattle, Washington, to his residential address and contained a copy of Vairo's Florida Driver's license.[10]

24.    The certificate of title for the 2021 Ferrari F8 Spider showed Richard Vairo as the owner as of July 6, 2022. On March 8, 2023, Richard Vairo transferred the title to Raphael Ewerton Vairo and Louise Ewerton Vairo, Vairo's children. A notation on the 2021 Ferrari F8 Spider title states transferred to Raphael or Louise as a "gift."[11]

25.    Vairo purchased the 2021 Ferrari F8 Spider through a series of transactions that involved moving fraudulently obtained illegal proceeds he received from Scholer through several bank accounts under Vairo's control and $35,165.07 that cannot be traced to illegal proceeds as explained above.

*HSBC 2516*[12]
*Richard's Brazilian Sausage, LLC*

26.    Vairo opened HSBC account 2516 on or about April 13, 2021, in the name of Richard's Brazilian Sausage, LLC, listing his sole signature on the account. From November 8, 2021, through February 18, 2022, the account received six deposits from accounts controlled by Scholer totaling $2,544,992.80. The account received only $159,654.74 in deposits from other sources.

27.    After Scholer's first two transfers, HSBC 2516 was overdrawn as of January 11, 2022, until it received a deposit from Scholer, who made subsequent deposits. Vairo used Scholer funds in this account to purchase consumer items, pay credit-card balances, and make large transfers to Truist Bank account 6903, Truist Bank account 6881, HSBC account 6911, and Citizen's account 8176, as detailed below:

| Date | Withdrawal/Transfer | Amount of Proceeds | To |
| --- | --- | --- | --- |
| 1/31/2022 | $232,000 | $232,000 | 6903 |
| 2/1/2022 | $35,000 | $35,000 | 6903 |

[10] Ex. 6, Bill of Lading and Vairo's Florida Driver's License.
[11] Ex. 7, Florida DMV Title.
[12] Ex. 3, LIBR Spreadsheet, Tab 2516, Tab 6903, Tab 6881, Tab 6911, and Tab 8176.

| 2/1/2022 | $35,000 | $35,000 | 6881 |
|---|---|---|---|
| 2/1/2022 | $31,000 | $31,000 | 6911 |
| 2/3/2022 | $19,000 | $19,000 | 6903 |
| 2/7/2022 | $389,000 | $389,000 | 6903 |
| 2/17/2022 | $99,000 | $99,000 | 6903 |
| 2/18/2022 | $99,500 | $99,500 | 6903 |
| 2/18/2022 | $99,850 | $99,850 | 6903 |
| 2/22/2022 | $559,283.39 | $559,283.39 | 8176 |

*Citizens Bank 8176*[13]
*Richard's Brazilian Sausage, LLC*

28.    Citizen's Bank account 8176 was opened as of February 19, 2022, in the name of Richard's Brazilian Sausage. It contains checks made payable to Richard Vairo as well as checks that appear to have been signed by Richard Vairo Santos. On February 22, 2022, the account had a balance of $559,283.39, consisting of illegal proceeds transferred from the closed HSBC account 2516, controlled by Vairo, to Citizens Bank account 8176, controlled by Vairo.

29.    Except for two deposits made into account 8176 – one from Auto Zone for $14.98 on April 20, 2022, and the other involving a $150.00 credit from Citizen's Bank on April 28, 2022 – the account only received deposits from Scholer and transfers from other accounts controlled by Vairo. Scholer's deposits totaled $7,070,199.28 of illegal proceeds in Citizens Bank account 8176 between February 2, 2022, and June 16, 2022.

30.    From February 22, 2022, through June 16, 2022, $6,928,485.04 of illegal proceeds were transferred from Citizens Bank account 8176 to Truist Bank account 6903. For the same time period, $230,000 in illegal proceeds was transferred from Citizens Bank account 8176 to Truist Bank account 6881. A total of $58,000 in illegal proceeds was transferred from account Citizens Bank account 8176 to Truist Bank account 6911.

/ / /

---

[13] Ex. 3, LIBR Spreadsheet, Tab 8176, Tab 2516, Tab 6093, Tab 6881.

**Truist Bank 6911**[14]
**Ewerton Consulting and Investments, LLC**

31.     On or about November 9, 2021, Vairo opened Truist Bank account 6911 and was the only signer on the account. Except for a deposit of $471.12, Truist Bank account 6911 only received deposits from Vairo-controlled accounts between January 28, 2022, and June 21, 2022. On January 28, 2022, the account had a balance of $954.96 that cannot be traced to illegal proceeds.

32.     Between January 28, 2022, and June 21, 2022, Truist Bank account 6911 received $31,000 of illegal proceeds in deposits from HSBC Bank account 2516. Truist Bank account 6911 received a total of $220,000 of illegal proceeds from Truist Bank account 6903 from January 28, 2022, to June 21, 2022, and a total of $118,000 of illegal proceeds from Citizen's Bank account 8176 from January 28, 2022, to June 21, 2022. On May 25, 2022, $235,800 of illegal proceeds was transferred from Truist Bank account 6911 to Truist Bank account 6903.

**Truist Bank 6903**[15]
**Richard's Brazilian Sausage, LLC**

33.     On or about November 9, 2021, Truist Bank checking account 6903 was opened in the name of Richard's Brazilian Sausage, LLC and Vairo was the only signer on the account. Truist Bank 6903 received the majority of its funds from accounts HSBC Bank account 2516, Citizen's Bank account 8176, and Truist Bank account 6911, which were illegal proceeds.

34.     On January 28, 2022, Truist Bank account 6903 had a balance of $4,969.79. Between January 28, 2022, and June 30, 2022, Truist Bank 6903 received $6,928,485.04 in illegal proceeds transferred from Citizens Bank 8176 and $973,350 of illegal proceeds transferred from HSBC Bank 2516. Truist Bank 6903 also received $235,800 of illegal proceeds transferred from Truist Bank 6911 on May 25, 2022.

---

[14] Ex. No. 3, Tab 6911, Tab 2516, Tab 6903, Tab 8176.
[15] Ex. No. 3, Tab 6903, Tab 6811, Tab 2516, Tab 6911, Tab 8176.

35. Vaio primarily used Truist Bank 6903 to make payments to retail establishments but also used it to wire funds to Scholer. From March 21, 2022, to June 28, 2022, 14 wire transfers totaling $6,294,479.26 were made from Truist Bank 6903 to Scholer's account. These payments were made to Scholer under the guise of investment returns but were Scholer's money through Vairo's multiple accounts. Scholer's money was not used to help Vairo sell more sausage to Publix, as promised.

36. Vairo made the following transfers from Truist Bank 6903 to other accounts Vario controlled:

| Date | Withdrawal | Amount of proceeds | To Account |
|------|-----------|-------------------|-----------|
| 1/31/2022 | $20,000 | $20,000 | 6881 |
| 2/7/2022 | $20,000 | $20.000 | 6911 |
| 2/22/2022 | $220,000 | $220,000 | 6881 |
| 2/25/2022 | $200,000 | $200,000 | 6911 |
| 6/6/2022 | $85,000 | $85,000 | 8176 |
| 6/17/2022 | $310,000 | $310,000 | 6881 |

37. On June 17, 2022, $310,000 of illegal proceeds from Truist Bank 6903 was transferred to Truist Bank 6881. Vario transferred the $310,000 of illegal proceeds to Truist Bank 6881 on the same day he purchased the 2021 Ferrari F8 Spider with the illegal funds from Truist Bank 6881.

*Truist Bank Account 6881*[16]
*Richard Vairo*

38. Vairo opened Truist Bank account 6881 in the name of Richard Vairo and as the sole signer. Vairo added Louise Ewerton Vairo as a signer to the account on November 18, 2021. The account received a deposit of $450,983.61 of illegal proceeds on November 9, 2021, from PNC Bank 5373. Truist Bank 6881 did not receive another deposit exceeding $2,000 that cannot be traced to illegal proceeds until January 31, 2022, when it began receiving sizeable deposits from other accounts Vario controlled:

[16] Ex. 3, LIBR Spreadsheet, Tab 6881, Tab 6903, Tab 5373, Tab 2516, Tab 8176.

| Date: | Amount of Deposit: | Amount of proceeds: | From: |
|---|---|---|---|
| 1/31/2022 | $20,000 | $20,000 | 6903 |
| 1/31/2022 | $35,000 | $35,000 | 2516 |
| 2/22/2022 | $220,000 | $220,000 | 6903 |
| 3/9/2022 | $30,000 | $30,000 | 8176 |
| 3/11/2022 | $30,000 | $30,000 | 8176 |
| 4/18/2022 | $30,000 | $30,000 | 8176 |
| 4/25/2022 | $50,000 | $50,000 | 8176 |
| 5/6/2022 | $90,000 | $90,000 | 8176 |
| 6/17/2022 | $310,000 | $310,000 | 6903 |

39. Truist Bank 6881 received the $310,000 of illegal proceeds deposit on June 17, 2022. On that day, $335,000 of illegal proceeds was transferred from Truist Bank 6881 to Automobili Italiane to purchase the 2021 Ferrari F8 Spider. Even though the deposit and withdrawal were made on the same day, the account was not overdrawn. Between November 8, 2021, and June 17, 2022, Truist Bank 6881 received less than $22,000 that cannot be traced to illegal proceeds.

### *Purchase of the 2023 Ferrari 296 GTS*

40. On or about April 10, 2024, Richard Vairo and Louise Vairo, daughter, purchased the Red 2023 Ferrari 296 GTS, Vehicle Identification Number ZFF01SMA5P0295815, from Cavallino Rosso St. Louis, the official Ferrari dealer. The purchase price was $541,851, and with add-ons a total price of $549,202. A trade in allowance of $372,350 for the 2021 Ferrari F8 Spider was credited towards the purchase. All the trade in allowance was illegal proceeds except $35,165.07 that cannot be traced to illegal proceeds. The buyers paid $10,000 at delivery, which cannot be traced to illegal proceeds, leaving a balance of $166,852. The application for Missouri Title and License for the 2023 Ferrari 296 GTS listed Richard and Louise Vairo as the owners dated April 11, 2024.

41.    The 2021 Ferrari F8 Spider was used as a trade-in for the 2023 Ferrari 296 GTS. Raphael Ewerton Vairo and Louise Ewerton Vairo were listed on the title as owners of the F8 Spider.[17]

42.    On April 15, 2024, $166,852, which cannot be traced to illegal proceeds was wired from Vairo's Truist account 6881 to Cavallino Rosso's account. On April 11, 2024, $10,000 was paid to Cavallino Rosso from an American Express credit card ending in 1010, authorized by the card holder, Louise Vairo. Richard Vario Santos and Lucianne P. Ewerton are the vehicle insurance policy holders.

43.    The purchase of the 2023 Ferrari 296 GTS was made with fraudulently obtained illegal proceeds from the trade in values received from the 2019 Ferrari Portofino and the 2021 Ferrari F8 Spider.

44.    The $549,202 purchase price of the 2023 Ferrari 296 GTS is fraudulently obtained illegal proceeds except the $35,165.07, the $10,000, and the $166,852, which cannot be traced to illegal proceeds, as mentioned above.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

[17] Ex. 8, Insurance Letter.

14

45.    The chart below depicts the succession of Ferrari purchases along with the trade-in values and cash applied towards the purchases.



46.    Richard Vairo agrees to the forfeiture of the property, the imposition of the forfeiture on the property, and the imposition of the in personam criminal forfeiture money judgment as set forth in this Stipulation for Entry of Order of Forfeiture as to Richard Vairo and Order (Stipulation) and the Forfeiture Allegation of the Criminal Indictment.

47.    Defendant Richard Vairo knowingly and voluntarily:

a.    Agrees to the district court imposing the civil judicial forfeiture or the criminal forfeiture of the 2023 Ferrari Model 296 GTS, red in color, Vehicle Identification Number: ZFF01SMA5P0295815 (property).

b.    Agrees to the district court imposing an in personam criminal forfeiture money judgment of $4,000,000, and that the net sale proceeds of the property will be applied toward the payment of the money judgment under Ninth Circuit case law, forfeiture statutes, and Fed. R. Crim. P. 32.2(b)(2)(A).

c.    Agrees the in personam criminal forfeiture money judgment amount complies with *United States v. Lo*, 839 F.3d 777 (9th Cir. 2016); *Honeycutt v. United States*, 581 U.S. 443 (2017); *United States v. Thompson*, 990 F.3d 680 (9th Cir. 2021); and *United States v. Prasad*, 18 F.4th 313 (9th Cir. 2021).

d.    Agrees to the civil judicial forfeiture and the criminal forfeiture of the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets;

e.    Forfeits the property and agrees to the substitution and forfeiture of defendant's other assets to satisfy the in personam criminal forfeiture money judgment to the United States;

f.    Relinquishes all possessory rights, ownership rights, and all rights, titles, and interests in the property and the substitution and forfeiture of defendant's other assets to satisfy the in personam criminal forfeiture money judgment;

g.    Waives defendant's rights to any civil judicial forfeiture proceedings, any criminal forfeiture proceedings of the property, any criminal forfeiture proceedings of the in personam criminal forfeiture money judgment, and any substitution and forfeiture of defendant's other assets (proceedings);

h.    Waives service of process of any and all documents filed in this action and any proceedings concerning the property and the in personam criminal forfeiture money judgment arising from the facts and circumstances of this case and the substitution and forfeiture of defendant's other assets;

i.    Waives any further notice to defendant, defendant's agents, and defendant's attorney regarding the forfeiture and disposition of the property, the in

/ / /

16

personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets;

j.      Agrees not to file any claim, answer, petition, and other documents in any proceedings concerning the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets; agrees not to contest, and agrees not to assist any other person and entity to contest, the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets; and agrees to withdraw immediately any claim, answer, petition, and other documents in any proceedings;

k.      Waives all constitutional, statutory, legal, equitable rights, defenses, and claims including, but not limited to, the seizure of the property, the forfeited property, and the criminal forfeiture money judgment in any proceedings under the Fourth Amendment to the United States Constitution;

l.      Waives the statute of limitations, the CAFRA requirements, Fed. R. Crim. P. 7, 11, 32.2, and 43(a), including, but not limited to, the forfeiture notice in the charging document, the court advising defendant of the forfeiture at the change of plea, the court having a forfeiture hearing, the court making factual findings regarding the forfeiture, the court announcing the forfeiture at the change of plea and sentencing, the court attaching the forfeiture order to the Judgment in a Criminal Case, the substitution and forfeiture of defendant's other assets, and any and all constitutional, statutory, legal equitable rights, defenses, and claims regarding the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets in any proceedings, including, but not limited to, double jeopardy and due process under the Fifth Amendment to the United States Constitution;

m.      Waives any and all constitutional, statutory, legal, equitable rights, defenses, and claims regarding the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets in any proceedings,

/ / /

17

including, but not limited to, a jury trial under the Sixth Amendment to the United States Constitution;

n.    Waives any and all constitutional, statutory, legal, equitable rights, defenses, and claims regarding the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets in any proceedings, including, but not limited to, excessive fines clause and cruel and unusual punishments clause under the Eighth Amendment to the United States Constitution;

o.    Waives any and all constitutional, statutory, legal, equitable rights, defenses, and claims regarding the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets in any proceedings under *Lo, Honeycutt, Thompson, and Prasad*;

p.    Agrees to the entry of an Order of Forfeiture of the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets to the United States;

q.    Waives the right to appeal any Order of Forfeiture;

r.    Agrees the property and the substitution and forfeiture of defendant's other assets are forfeited to the United States;

s.    Agrees the property and the substitution and forfeiture of defendant's other assets can be taken into custody immediately and the in personam criminal forfeiture money judgment is immediately due and payable and is subject to immediate collection by the USAO;

t.    Agrees and understands the civil administrative forfeiture, the civil judicial forfeiture, and the criminal forfeiture of the property, the in personam criminal forfeiture money judgment, and the substitution and forfeiture of defendant's other assets to satisfy the money judgment shall not be treated as satisfaction of any assessment, fine, restitution, cost of imprisonment, and any other penalty the Court may impose upon defendant in addition to the forfeiture;

/ / /

18

u.    Agrees and understands that on the government's motion, the court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include subsequently located property or substitute property under Fed. R. Crim. P. 32.2(b)(2)(A) and (C) and 32.2(e);

v.    Acknowledges the amount of the forfeiture may differ from, and may be significantly greater than or less than, the amount of restitution;

w.    Agrees to take all steps as requested by the USAO to pass clear title of the property and of any forfeitable assets which may be used to satisfy the in personam criminal forfeiture money judgment to the United States and to testify truthfully in any judicial forfeiture proceedings. Defendant understands and agrees that the property and the in personam criminal forfeiture money judgment amount represent proceeds and/or facilitating property of illegal conduct and are forfeitable. Defendant shall provide the USAO with a full and complete financial disclosure statement under penalty of perjury within 10 days of executing the plea agreement. The financial statement shall disclose to the USAO all assets and financial interests valued at more than $1,000. Defendant understands these assets and financial interests include all assets and financial interests that defendant has an interest, direct or indirect, whether held in defendant's name or in the name of another, in any property, real or personal. Defendant shall also identify all assets valued at more than $1,000 which Defendant has transferred to third parties or diverted from defendant, directly to third parties, since September 2021, including the location of the assets and the identity of any third party; and

x.    Admits the property and the in personam criminal forfeiture money judgment amount are any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1343, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense and are subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c) and 21 U.S.C. § 853(p).

/ / /

48.    Richard Vairo knowingly and voluntarily agrees to the conditions set forth in this Stipulation.

49.    Richard Vairo knowingly and voluntarily agrees to hold harmless the United States, the United States Department of Justice, the United States Attorney's Office for the District of Nevada, the Federal Bureau of Investigation, their agencies, their agents, and their employees from any claim made by him or any third party arising from the facts and circumstances of this case.

50.    Richard Vairo knowingly and voluntarily releases and forever discharges the United States, the United States Department of Justice, the United States Attorney's Office for the District of Nevada, the Federal Bureau of Investigation, their agencies, their agents, and their employees from any and all claims, rights, or causes of action of any kind that Richard Vairo now has or may hereafter have on account of, or in any way growing out of, the seizures and the forfeitures of the property in the civil judicial forfeitures or the criminal forfeitures.

51.    Each party acknowledges and warrants that its execution of this Stipulation is free and is voluntary.

52.    This Stipulation contains the entire agreement between the parties.

53.    Except as expressly stated in this Stipulation, no party, officer, agent, employee, representative, or attorney has made any statement or representation to any other party, person, or entity regarding any fact relied upon in entering into this Stipulation, and no party, officer, agent, employee, representative, or attorney relies on such statement or representation in executing this Stipulation.

54.    The persons signing this Stipulation warrant and represent that they have full authority to execute this Stipulation and to bind the persons and/or entities, on whose behalf they are signing, to the terms of this Stipulation.

55.    This Stipulation shall be construed and interpreted according to federal forfeiture law and federal common law. The jurisdiction and the venue for any dispute

/ / /

related to, and/or arising from, this Stipulation is the unofficial Southern Division of the United States District Court for the District of Nevada, located in Las Vegas, Nevada.

56. Each party shall bear his or its own attorneys' fees, expenses, interest, and costs.

57. This Stipulation shall not be construed more strictly against one party than against the other merely by virtue of the fact that it may have been prepared primarily by counsel for one of the parties; it being recognized that both parties have contributed substantially and materially to the preparation of this Stipulation.

IT IS HEREBY CERTIFIED, under 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure and forfeiture of the property.

DATED: 2-24-26

DATED: 2-26-2026

TODD BLANCHE
Deputy Attorney General of the United States

JUDE MICHAEL FACCIDOMO
Counsel for Richard Vairo

DANIEL R. SCHIESS
Assistant United States Attorney

DATED: 02-09-26

RICHARD VAIRO

IT IS SO ORDERED:

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

DATED: February 27, 2026